UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America, Civil File No. 01-497 (PAM/JGL)

Plaintiff,

v. **ORDER**

$354,510.00 in U.S. Currency,

Defendant.

---

This matter is before the Court on the Government's Motions to Strike the Verified Statement of Michael Wong, for Default Judgment Against All Unknown Persons, and for Forfeiture of the Defendant Currency to the Government. For the reasons that follow, the Court grants the Motions.

**BACKGROUND**

On December 11, 2000, Agents from the United States Drug Enforcement Administration ("DEA") received information that Michael Wong was traveling from New York to Seattle on an Amtrak train. At approximately 10:40 p.m., DEA agents boarded the train at the Amtrak Depot in St. Paul, Minnesota. After attempting to find Wong in the sleeper car where he was staying, the agents went to the common baggage area and had a certified drug detection dog, Boston, sniff the luggage. Boston identified a large green suitcase with an "M. Wong" baggage tag.

FILED AUG 31 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD AUG 31 2001
DEPUTY CLERK

The agents proceeded to look for Wong, eventually finding him in the smoking lounge car. After identifying themselves, the agents asked Wong a number of questions, focusing on the nature of Wong's business in New York. Wong replied that he had been in New York for about a week visiting a friend. The Agents then asked Wong if he had any luggage with him. Although somewhat reticent, Wong finally admitted that he had one piece of luggage. The agents went with Wong to the baggage car where Wong identified the large green suitcase as his.

Wong then granted the agents permission to search the suitcase. Inside, the agents found a paper bag containing $345,510. $145,700.000 was inside two white plastic bags within a yellow plastic bag; $106,500.00 was in a brown paper bag along with a piece of paper with a variety of numbers written on it; and $93,310.00 was in a black box along with another piece of paper with numbers on it. The majority of the currency was in $20, $50, and $100 denominations, which, according to the DEA agents, is consistent with the drug trade. Several trained narcotics officers noted that there was the smell of marijuana emanating from the currency. Wong told the agents that the bag contained a "few hundred thousand dollars" for "land investment." (Scheer Aff. at ¶ 9). Upon further questioning about the nature of the land investment, Wong said, "Just take the money, I don't want it." (Id.). Wong stated that he did not have any receipts for the money and refused to give the names of the business partners from whom he claimed to have collected the money. He did provide the agents with his own address, but he gave no different address for his alleged personal company, "Wong

and Associates." (See Id. at ¶ 11). At this point, the DEA agents told Wong that they were going to seize the money. Wong then stated that he was an engineer and always carried a lot of money with him. The agents gave Wong a receipt and told Wong that he would receive information in the mail about the money.

On April 10, 2001, a Warrant of Arrest and Notice In Rem was issued by the Clerk of Court to the United States Marshal, directing the Marshal to arrest the Defendant currency, serve all known persons and entities claiming an interest in the currency with a copy of the Summons, Complaint, and Warrant of Arrest, and give due notice to all known and unknown interested persons. On May 10, 2001, the Marshal arrested the currency and served a copy of the required information on Michael Wong, through his attorney Gilbert H. Levy. A notice of the arrest and seizure of the Defendant currency was published in Finance and Commerce, a newspaper of general circulation in the District of Minnesota, on April 24, May 1, and May 8, 2001. On June 11, 2001, Wong filed a verified statement of interest in the Defendant currency; however, Wong did not file an answer to the Complaint for Forfeiture within the required time limit. No other verified statements of interest or answers to the Complaint for Forfeiture have been filed. Accordingly, on August 1, 2001, the Clerk of Court entered a Default against Wong and all unknown persons and entities having an interest in the Defendant currency.

**DISCUSSION**

The Government seeks forfeiture under 21 U.S.C. § 881(a)(6). It is the Government's initial burden to show that probable cause exists to believe that there is a connection between the property and drug trafficking. United States v. $141,770 in U.S. Currency, 157 F.3d 600, 603 (8th Cir. 1998). It is not enough for the Government to establish merely a connection between the property and general criminality. See United States v. $141,770.00 in U.S. Currency, 157 F.3d 600, 603 (8th Cir. 1998). However, the Government meets its burden by "presenting evidence which creates 'more than a mere suspicion but less than prima facie proof' that the seized property is related to drug trafficking." Id. (quoting United States v. $39,873.00, 80 F.3d 317, 318 (8th Cir. 1996)). If the Government meets its burden, the burden then shifts to the claimant to prove by a preponderance of the evidence that the property is not connected with drug trafficking, or that a defense to forfeiture applies. United States v. $39,873.00, 80 F.3d 317, 318 (8th Cir.1996).

In $141,700.00, the court held that although a large amount of unexplained currency, standing alone, might be inadequate to support a forfeiture, the presence of unexplained currency coupled with other circumstantial evidence including the indications of a drug detection dog, the unusual packaging of the money, and the inconsistent statements of the person in control of the money were sufficient to support a forfeiture.

This case is analogous to $141,700.00. Although the unexplained presence of $345,510.00 alone might not be sufficient to justify the Government's seizure of the

Defendant currency, the Government has produced an aggregate of circumstantial evidence sufficient to meet its burden. In this case, the drug detection dog identified Wong's suitcase, the DEA agents who examined the money found in Wong's suitcase noticed the smell of marijuana emanating from the money, the agents noted the unusual packaging and large denominations of the money which are consistent with the drug trade, and Wong made a number of inconsistent statements relating to his acquisition of the money and its ultimate purpose. Because the Government has met its burden, the burden shifts to any claimants to prove that the currency is not related to drug trafficking.

Michael Wong might be considered such a claimant. Wong did file a timely verified statement of interest pursuant to Fed. R. Civ. P., Supp. Rule C(6). Nevertheless, this Court determines that Wong has abandoned any claim that he might have had to the currency, because he did not file an answer within the prescribed time limit. Rule C(6)(a)(iii) explicitly requires that a claimant "serve an answer within 20 days after filing the statement." Id. The Eighth Circuit has repeatedly held that it is appropriate for district courts to require strict compliance with the filing requirements of Rule C(6). See e.g. United States v. Ford 250 Pickup 1990, 980 F.2d 1242, 1245 (8th Cir. 1992) (holding that it was within the appropriate scope of the district court to require strict compliance with Rule C(6) and strict compliance requires both a claim and an answer); United States v. One Parcel of Property, 959 F.2d 101, 104 (8th Cir. 1992); United States v. Beechcraft Queen Airplane, 789 F.2d 627, 630 (8th Cir. 1986). Wong did not comply with these procedural requirements even though he was

he was provided with appropriate notice. Accordingly, Wong has abandoned any claims he might have had to the Defendant currency and his verified statement should be stricken.

**CONCLUSION**

The Court finds that the Government has proved that it is entitled to forfeit the defendant currency. Accordingly, **IT IS HEREBY ORDERED** that the United States' Motions to Strike the Verified Statement of Michael Wong, for Default Judgment Against All Unknown Persons, and for Forfeiture of the Defendant Currency to the Government (Clerk Doc. No. 12) are **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: ~~June 28~~ August 31, 2001

Paul A. Magnuson
United States District Court Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES: AUG 31 2001

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995