UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

Plaintiff,

v.

$345,510.00 in U.S. Currency,

Defendant.

Civil File No. 01-497 (PAM/JGL)

**AMENDED MEMORANDUM AND ORDER**

---

This matter is before the Court on the Government's Motions to strike the verified statement of Michael Wong, for default judgment against Michael Wong and all unknown persons, and for forfeiture of the Defendant currency to the Government. For the reasons that follow, the Court grants the Motions.

**BACKGROUND**

On December 11, 2000, Agents from the United States Drug Enforcement Administration ("DEA") received information that Michael Wong was traveling from New York to Seattle on an Amtrak train. At approximately 10:40 p.m., DEA agents boarded the train at the Amtrak Depot in St. Paul, Minnesota. After attempting to find Wong in the sleeper car where he was staying, the agents went to the common baggage area and had a certified drug detection dog, Boston, sniff the luggage. Boston identified a large green suitcase with an "M. Wong" baggage tag.

FILED JAN 02 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD JAN 02 2002
DEPUTY CLERK

The agents proceeded to look for Wong, eventually finding him in the smoking lounge car. After identifying themselves, the agents asked Wong a number of questions, focusing on the nature of Wong's business in New York. Wong replied that he had been in New York for about a week visiting a friend. The Agents then asked Wong if he had any luggage with him. Although somewhat reticent, Wong finally admitted that he had one piece of luggage. The agents went with Wong to the baggage car where Wong identified the large green suitcase as his.

Wong granted the agents permission to search the suitcase. He told the agents that the bag contained a "few hundred thousand dollars" for "land investment." (Scheer Aff. at ¶ 9.) Upon further questioning about the nature of the land investment, Wong said, "Just take the money, I don't want it." (Id.) Wong stated that he did not have any receipts for the money and refused to give the names of the business partners from whom he claimed to have collected the money. He did provide the agents with his own address, but he gave no different address for his alleged personal company, "Wong and Associates." (See id. at ¶ 11.) At this point, the DEA agents told Wong that they were going to seize the money. Wong then stated that he was an engineer and always carried a lot of money with him. The agents gave Wong a receipt and told Wong that he would receive information in the mail about the money.

Inside, the agents found a paper bag containing $345,510.00. $145,700.00 was inside two white plastic bags within a yellow plastic bag; $106,500.00 was in a brown paper bag

along with a piece of paper with a variety of numbers written on it; and $93,310.00 was in a black box along with another piece of paper with numbers on it. The majority of the currency was in $20, $50, and $100 denominations, which, according to the DEA agents, is consistent with the drug trade. Several trained narcotics officers noted that there was the smell of marijuana emanating from the currency.

On April 10, 2001, a Warrant of Arrest and Notice In Rem was issued by the Clerk of Court to the United States Marshal, directing the Marshal to arrest the Defendant currency, serve all known persons and entities claiming an interest in the currency with a copy of the Summons, Complaint, and Warrant of Arrest, and give due notice to all known and unknown interested persons. On May 10, 2001, the Marshal arrested the currency and served a copy of the required information on Michael Wong, through his attorney Gilbert H. Levy. A notice of the arrest and seizure of the Defendant currency was published in Finance and Commerce, a newspaper of general circulation in the District of Minnesota, on April 24, May 1, and May 8, 2001. On June 11, 2001, Wong filed a verified statement of interest in the Defendant currency; however, Wong did not file an answer to the Complaint for Forfeiture within the required time limit. No other verified statements of interest or answers to the Complaint for Forfeiture have been filed. Accordingly, on August 1, 2001, the Clerk of Court entered a Default against Wong and all unknown persons and entities having an interest in the Defendant currency.

**DISCUSSION**

The Government filed a Complaint for Forfeiture against the Defendant currency, alleging that it was subject to forfeiture because it was furnished, or intended to be furnished, in exchange for a controlled substance. See 21 U.S.C. § 881(a)(6). The Government contends that because no one has answered its Complaint, it is entitled to default judgment. Apparently relying on the axiomatic proposition that facts detailed in the Complaint and its supporting affidavit may not be contested if the Court determines that the nonmoving parties are in default, see, e.g., McMillian/McMillian, Inc. v. Monticello Ins. Co., 116 F.3d 319, 321 (8th Cir. 1997), the Government essentially contends that it need not discuss and this Court need not consider the forfeitability of the Defendant currency.

It is well established, however, that the entry of default by the Clerk does not entitle the non-defaulting party to a default judgment as a matter of right. See, e.g., Weft, Inc. v. G.C. Inv. Assocs., 630 F. Supp. 1138, 1141 (E.D.N.C. 1986) ("Despite occasional statements to the contrary . . . a default is not treated as an absolute confession by [a nonmoving party] of his [or her] liability and the plaintiff's right to recover.")(quoting Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)); Bermudez v. Reid, 733 F.2d 18, 21 (2d Cir. 1984); 10A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure Civil § 2688 (1998) ("Even after default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law."); Black v. Lane, 22 F.3d

1395, 1399 (7th Cir. 1994) ("The entry of a default order does not preclude a party from challenging the sufficiency of the complaint."); Cripps v. Life Ins. Co. of North Am., 980 F.2d 1261, 1267 (9th Cir. 1992) ("[N]ecessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."). But see Anchorage Assocs. v. Virgin Islands Bd. of Tax Rev., 922 F.2d 168, 177 n. 9 (3d Cir. 1990) ("When a defendant fails to appear . . ., the district court or its clerk is authorized to enter a default judgment based solely on the fact that the default has occurred.").

At least implicitly recognizing this, the Seventh Circuit has noted that in the context of civil forfeitures "[t]he claimant, of course, need not do anything to rebut the government's proof if the government's proof is insufficient to demonstrate the requisite nexus between the property and illegal narcotics activities." United States v. $506,231.00 in U.S. Currency, 125 F.3d 442, 451 (7th Cir. 1997); see also United States v.$10,700.00 in U.S. Currency, 258 F.3d 215, 222 (3d. Cir. 2001). Although the Civil Asset Forfeiture Reform Act of 2000, 18 U.S.C. § 981 et seq., lowered the burden of proof by which the Government is required to demonstrate this nexus from probable cause to a preponderance of the evidence, the Government retains the initial burden of establishing that the of the Defendant currency is subject to forfeiture. The fact that this case is before the Court on the Government's motion for a default judgment simply means that the Government's presentation of the facts stands unrebutted. The Court must still determine whether these facts are sufficient to establish by

a preponderance of the evidence that the Defendant currency is connected with illegal narcotics activity. See 18 U.S.C. § 983(c)(1).

The instant case is similar to United States v. $141,770.00 in U.S. Currency, 157 F.3d 600, 603 (8th Cir. 1998). In $141,770.00, the court held that although a large amount of unexplained currency, standing alone, might be inadequate to support a forfeiture, the presence of unexplained currency coupled with other circumstantial evidence including the indications of a drug detection dog, the unusual packaging of the money, and the inconsistent statements of the person in control of the money were sufficient to establish probable cause connecting the currency and narcotics activity.

Here, although the unexplained presence of $345,510.00 alone might not be sufficient to justify the forfeiture of the Defendant currency, the Government has produced an aggregate of circumstantial evidence sufficient to establish by a preponderance of the evidence that the Defendant currency was connected with narcotics activity. The drug detection dog identified Wong's suitcase, the DEA agents who examined the money found in Wong's suitcase noticed the smell of marijuana emanating from the money, the agents noted the unusual packaging and large denominations of the money which are consistent with the drug trade, and Wong made a number of inconsistent statements relating to his acquisition of the money and its ultimate purpose. Accordingly, the Government is entitled to entry of a default judgment in its favor.

The fact that Wong filed a timely verified statement of interest pursuant to Fed. R. Civ. P., Supp. Rule C(6), does not alter this result. Wong has abandoned any claim that he might have had to the Defendant currency, because he did not file an answer within the prescribed time limit. Rule C(6)(a)(iii) explicitly requires that a claimant "serve an answer within 20 days after filing the statement." Id. The Eighth Circuit has repeatedly held that it is appropriate for district courts to require strict compliance with the filing requirements of Rule C(6). See e.g. United States v. Ford 250 Pickup 1990, 980 F.2d 1242, 1245 (8th Cir. 1992) (holding that it was within the appropriate scope of the district court to require strict compliance with Rule C(6) and strict compliance requires both a claim and an answer); United States v. One Parcel of Property, 959 F.2d 101, 104 (8th Cir. 1992); United States v. Beechcraft Queen Airplane, 789 F.2d 627, 630 (8th Cir. 1986). Wong was provided with appropriate notice, but he did not comply with these procedural requirements. Thus, Wong's verified statement will be stricken.

**CONCLUSION**

The Court finds that the unrebutted facts adduced by the Government establish by a preponderance of the evidence that the Defendant currency is subject to forfeiture. Because no claimant has come forward to answer the Government's Complaint for Forfeiture, **IT IS HEREBY ORDERED** that the United States' Motions to strike the verified statement of Michael Wong, for default judgment against Michael Wong and all unknown persons, and for forfeiture of the Defendant currency to the Government (Clerk Doc. No. 12) are **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: January 2, 2002

Paul A. Magnuson
United States District Court Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.